**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CV-2736 (NEB/KMM) |
| Petitioner, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| STEVEN WAYNE FELDMANN, | |
| Respondent. | |

The government petitioned the Court to determine the present mental condition of Steven Wayne Feldmann, who is an imprisoned person due for release, under 18 U.S.C. Section 4246. In a Report and Recommendation, United States Magistrate Judge Katherine Menendez recommends that Feldmann be committed to the custody of the Attorney General under Section 4246. (ECF No. 35 ("R&R").) Feldmann objects to the R&R. (ECF No. 39 ("Obj.").) The Court has reviewed *de novo* those portions of the R&R to which Feldmann objects. 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2. Because the Court finds that Feldmann has a mental disease or defect such that his release would create a substantial risk of bodily injury to another person, the Court overrules Feldmann's objection, accepts the R&R, and grants the government's petition.

## BACKGROUND

The Court incorporates by reference the R&R's comprehensive background on this case, (R&R at 2–13), and focuses on facts relevant to Feldmann's objection. In December 2017, Feldmann was arrested and charged with communicating a threat to injure another person in violation of 18 U.S.C. Section 875(c). USA 722–24[1] (*United States v. Feldmann*, No. 3:17-MJ-5388-RB-CG, ECF No. 3 (W.D. Tex. Dec. 7, 2017) ("Crim. Compl.")). The Texas district court found Feldmann incompetent to stand trial and committed him to the custody of the Attorney General under 18 U.S.C. Section 4241(d). *United States v. Feldmann*, No. 3:17-MJ-5388-RB-CG, ECF No. 25 (W.D. Tex. May 8, 2018). In May 2019, the court found it unlikely that Feldmann's competency would be restored in the near term and committed him to the Attorney General for a risk assessment under Section 4246. (Gov't Ex. A; ECF No. 1 ("Pet.") ¶ 1; R&R at 5.)

Feldmann was transferred to the Federal Medical Center ("FMC") in Rochester, Minnesota, where a panel of three FMC psychologists, including Melissa J. Klein, Ph.D., L.P., examined him and completed a risk assessment report. (Pet. ¶¶ 2–3; Gov't Ex. C at 34 ("Risk Assessment") (filed under seal).) The FMC panel unanimously concluded that Feldmann suffers from a mental disease or defect such that his release would create

---

[1] The record includes "USA" Bates-stamped documents, as well as the government's and respondent's exhibits submitted at the evidentiary hearing before Judge Menendez.

a substantial risk of bodily injury to another person or serious damage to the property of others. (Pet. ¶ 3; Risk Assessment at 32–33.)

The government filed the instant petition to determine Feldmann's present mental condition under Section 4246, and in August 2020, Judge Menendez held an evidentiary hearing at which the government called Dr. Klein as an expert witness. (ECF No. 24; ECF No. 28 ("Hr'g Tr.").) Feldmann attended the hearing with his counsel, but did not testify.

Dr. Klein testified about Feldmann's mental impairments, medical history, and behavior at FMC. (Hr'g Tr. at 9–16, 21–25.) The FMC panel diagnosed Feldmann with schizoaffective disorder, bipolar type, which included "symptoms of full schizophrenia or a psychotic illness as well as mood symptoms at times during the course of the psychotic illness. The psychotic symptoms include hallucinations, delusions, disorganized thoughts and speech and disorganized behavior," as well as symptoms of depression, mania, both, or suicidal affect. (Hr'g Tr. at 9–10.) Dr. Klein testified that Feldmann has exhibited hallucinations, paranoid delusions, grandiose delusions, and "unstable moods with irritability and hostility." (*Id.* at 11–13.)

Dr. Klein stated that, to a reasonable degree of professional certainty, she believes Feldmann has a mental defect and poses a substantial risk of bodily injury to the community based on his "pattern of escalating, threatening, aggressive behavior," including a long-standing history of anti-social behaviors and violent acts. (*Id.* at 17; *see id*. at 20 (noting Feldmann's arrests for battery).) She noted multiple incidents of

Feldmann going into courthouses and "becoming hostile to the point that people felt threatened." (*Id.* at 18.) He has been banned from two courthouses and has made threatening and harassing phone calls to the courthouses. (*Id.*; *see, e.g., id.* at 18–19 (noting Feldmann called the court and "made statements about creating a blood bath at the courthouse"); Crim. Compl.) During his time at the FMC, Feldmann continued to make statements about the federal judge he allegedly threatened, including saying that the judge should be "shot in the head." (Hr'g Tr. at 21–22 (quoting Gov't Ex. G); *see also id.* at 24–25 (citing Gov't Exs. M, N); Risk Assessment at 15.)

Dr. Klein noted that Feldmann said he was hospitalized more than twenty-five times, and has adjusted relatively well to institutions. (Hr'g Tr. at 39–40.) The FMC panel—including Dr. Klein—concluded that, because of Feldmann's mental disease or defect, his release would create a substantial risk of bodily injury to others or serious damage to the property of another. (Risk Assessment at 33; Hr'g Tr. at 17.) In reaching this conclusion, the FMC panel considered Feldmann's mental illness symptoms, "the ideation that he has about using violence as an appropriate means to get his concerns addressed and met, [and] that escalation of pattern of incidents over that period of time," coupled with his psychosocial factors. (Hr'g Tr. at 55.) They also considered that physical violence was "not an extremely prominent piece of Mr. Feldmann's history." (*Id.*)

In the R&R, Judge Menendez found that the FMC panel's unanimous opinion established that Feldmann was suffering from a mental disease or defect, as a result of

4

which his release would pose a substantial risk of injury to another person. (R&R at 14–21.) She also determined that appropriate state placement was not currently available and therefore recommended Feldmann be committed under Section 4246. (*Id.* at 21–24.). The Court reviews *de novo* those portions of the R&R to which Feldmann objects. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3).

## ANALYSIS

### I. Legal Standard

A person who is due for release may be hospitalized indefinitely if, "as the result of a mental illness, [he] poses a significant danger to the general public." *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997); 18 U.S.C. § 4246. To warrant commitment under Section 4246, the Court must find "by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d); *see generally Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (explaining the clear-and-convincing standard as requiring "in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable") (quotation omitted). The government must prove "(1) a mental disease or defect, (2) dangerousness if released, and (3) the absence of suitable state placement." *United States v. Williams*, 299 F.3d 673, 676 (8th Cir. 2002) (citation omitted, cleaned up).

5

Section 4246 also requires "a direct causal nexus between the mental disease or defect and dangerousness." *Id.*

## II. Mental Disease or Defect

The parties agree that Feldmann suffers from the mental disease or defect of schizoaffective disorder, bipolar type. (ECF No. 30 at 14; ECF No. 34 at 1 ("recogniz[ing] and agree[ing] with" Feldmann's diagnosis of schizoaffective disorder); ECF No. 39 at 1 (same).) The Risk Assessment and Dr. Klein's testimony support this conclusion. (Risk Assessment at 18–19; Hr'g Tr. at 9.) Based on the record, the Court likewise concludes that Feldmann has a mental disease or defect. *See United States v. Lewis*, 929 F.2d 440, 442 (8th Cir. 1991) (holding that a "unanimous expert opinion" supported the findings of mental disease or defect and dangerousness).

The parties dispute whether the government has proven the remaining two requirements: Feldmann's dangerousness and the lack of a suitable state placement.

## III. Dangerousness

Section 4246 requires a finding of "substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d); *see generally Addington v. Texas*, 441 U.S. 418, 427 (1979) (holding that to justify a civil commitment, the government must prove "something more serious than is demonstrated by idiosyncratic behavior"). "Overt acts of violence are not required to prove dangerousness." *Williams*, 299 F.3d at 677. Courts consider several factors in determining potential dangerousness,

6

including "a history of dangerousness, a history of drug or alcohol use, identified potential targets, previous use of weapons, any recent incidents manifesting dangerousness, and a history of problems taking prescribed medicines."[2] *United States v. Ecker*, 30 F.3d 966, 970 (8th Cir. 1994); *see, e.g.*, *Williams*, 299 F.3d at 677–78 (considering various *Ecker* factors in determining a party's dangerousness under Section 4246); *United States v. Hunt*, 737 F. App'x 805, 806 (8th Cir. 2018) (citing *Ecker* as "listing suggested factors in determining potential dangerousness"); *United States v. Jones*, No. 10-CV-2595 (JRT/FLN), 2011 WL 13189791, at *4 (D. Minn. Feb. 17, 2011) (considering *Ecker* factors to find the government established the respondent's dangerousness), *aff'd*, 471 F. App'x 551 (8th Cir. 2012).

***History of Dangerousness.*** According to Feldmann, the R&R exaggerates the significance of his criminal record and relies on undocumented arrests, dismissed cases, and other crimes lacking supporting documentation. (Obj. at 3–5, 12.) But substantial risk "may be based on *any* activity that evinces a genuine possibility of future harm to persons or property." *Williams*, 299 F.3d at 677 (quoting *United States v. Sahhar*, 917 F.2d 1197, 1207

---

[2] Regarding the previous-use-of-weapons factor, the government concedes that Feldmann has not used weapons. (ECF No. 30 at 16 n.4.) But "no individual factor is dispositive of the Court's analysis . . . . [T]he Court must weigh all of the evidence to determine if the standard has been met." *United States v. Jensen*, No. 16-CV-1661(SRN/KMM), 2017 WL 1753291, at *7 (D. Minn. Apr. 25, 2017), *R&R adopted*, 2017 WL 1740154 (D. Minn. May 3, 2017). Given the FMC panel's analysis of the other risk factors, Feldmann's lack of use of weapons does not defeat the government's showing of dangerousness. (*See* Hr'g Tr. at 55–56 (explaining that a history of access to weapons does not determine dangerousness).)

7

(9th Cir. 1990)) (emphasis in original). Feldmann's criminal history spans decades and includes multiple arrests for battery, substantial battery, battery of a law enforcement officer or fire fighter, domestic battery, disorderly conduct, and several drug-related offenses. (*See* USA 1391–449 (FBI criminal history report dated Sept. 3, 2019).) The FMC panel noted that some of the charged offenses did not lead to convictions, but still considered the violent and drug-related nature of these offenses to be seriously troubling. (Risk Assessment at 27–29.) The record does not contain detailed information about many of these charges,[3] but it does describe more recent offenses, including Feldmann's misdemeanor disorderly conduct in 2013[4] and the conduct that led to the pending charges of threatening to harm a federal judge, which began in 2014 and led to his arrest in 2017.[5]

---

[3] Feldmann denies the accuracy of his criminal history, but provides no evidence of a single inaccuracy. And Feldmann may be at least partially responsible for the lack of detailed records. The Risk Assessment explains that the FMC panel's concerns were based on "limited historical records" because Feldmann "was unwilling to sign releases of information in order to receive records from past psychiatric hospitalizations." (Risk Assessment at 28; *see* USA 910 (Oct. 7, 2019 BOP notes stating Feldmann declined to sign releases).)

[4] In January 2013, Feldmann became "loud and destructive" at a public library in Madison Wisconsin, when library staff asked him to log off of a computer. (USA 630; Risk Assessment at 12–13.) In response to being banned from the library, Feldmann threatened to "knock . . . out" a staff member. (USA 630.) He left the library, but returned later and tried to spit on library staff members who approached him. (*Id.*) While being booked for the offense, Feldmann became upset and "kneed a police [officer] in the head." (*Id.*)

[5] Feldmann claims that the criminal charges do not support a finding of dangerousness because the complaint merely describes "a series of minor disturbances at federal courthouses," and several unintelligible and difficult-to-decipher voicemail messages Feldmann allegedly left at the Clerk's Office, one of which threatened a federal judge.

8

(USA 630; USA 721–24.) Feldmann's lengthy criminal history and the detailed information about his more recent incidents of aggressive behavior, coupled with his statements made during his FMC assessment and other relevant factors (addressed below) led the FMC panel to a conclusion of dangerousness. (Risk Assessment at 9–15, 27–31.)

Feldmann contends that the R&R inappropriately relied on unsubstantiated claims about the pending criminal charges, despite the presumption of his innocence. (Obj. at 5–6, 13.) But courts have relied on a panel's finding of a violent personal history where the person likely committed violence relating to pending charges. *United States v. Thomas*, 949 F.3d 1120, 1122 (8th Cir. 2020) (affirming commitment where panel found the party "likely committed violence related to the charged conspiracy"). Here, the criminal complaint against Feldmann attached a sworn statement that Feldmann identified himself and repeatedly made threatening statements to federal court personnel in El Paso, Texas, and Las Vegas, Nevada, over several years. (USA 721–24 (attesting to information gathered in United States Marshal Service investigation).) The FMC panel

---

(Obj. at 6, 13.) But courts may consider such evidence in determining dangerousness. *See generally United States v. Evanoff*, 10 F.3d 559, 561–62 (8th Cir. 1993) (holding that "records of vague, angry, and threatening statements Evanoff made while at FMC," among other evidence, supported a finding of dangerousness). And the evidence suggests that Feldmann's aggressive behavior amounted to more than "minor disturbances." Feldmann's repeated threats caused federal employees to fear for their safety. (*See* Crim. Compl. at USA 722–23 (attesting that Feldmann left voicemails for federal court personnel stating, "you are gonna meet the bullet" and "I'm gonna take you to the gallows").)

and this Court may consider the charges pending against Feldmann. *See, e.g.*, *Ecker*, 30 F.3d at 970 n.6 (affirming commitment where the expert testified to the party's "history of carrying weapons, including the pending charge in this case"); *United States v. O'Laughlin*, 695 F. App'x 172, 172 (8th Cir. 2017) (holding that a district court's order was supported by the expert opinions that the party "minimized the seriousness of, and recently continued to engage in, the behaviors that led to his criminal charges").

***History of drug or alcohol use.*** Feldmann maintains that the R&R's finding that he had chemical dependency problems is unsupported by the record. (Obj. at 7.) The FMC panel did not diagnose Feldmann with a substance-related disorder because of the limited availability of information. (Risk Assessment at 19; *see* Hr'g Tr. at 46–47 (testifying that Feldmann was diagnosed with alcohol use disorder and cocaine use 20 years ago, but does not currently have a substance abuse problem).) But the Risk Assessment notes that Feldmann has several arrests for the possession, use, and trafficking of illegal substances over a span of several years, suggesting his substance use has been "heavy and chronic." (*Id.* at 4–5, 19, 28–29; *see id.* at 19 (noting "clear indications that substance abuse caused Mr. Feldmann significant problems in the past").) Given Feldmann's criminal history relating to substance abuse, the Court is concerned that if he is released to an uncontrolled environment, Feldmann would use drugs and alcohol, thereby increasing the risk that he would engage in dangerous conduct.

*History of problems taking prescribed medicines*. Feldmann acknowledges that while at a medical center in Springfield, Missouri, he refused to take recommended increased doses of medication to better manage his psychiatric symptoms, but notes that he later agreed to the increased medication. (Obj. at 14 n.3; *see also* Hr'g Tr. at 48; Risk Assessment at 8, 29, 32.) He claims that his current medication compliance, as well as his overall positive functioning, stability, and cooperative demeanor at the FMC, show that he does not pose a serious risk of danger to others or property. (Obj. at 14; *see* Risk Assessment at 23–24 (noting Feldmann is taking psychiatric medication that he described as "helpful" and keeping him "stable").) But the record includes other troubling instances of Feldmann's refusal to take his prescribed psychiatric medication: he was not taking his medication when he admitted himself to a medical facility in Los Angeles, or when he was arrested for the pending charges. (Resp. Ex. 1 at 38–39; Hr'g Tr. at 29; Risk Assessment at 29.) The FMC panel concluded that if Feldmann were released "without [being] provid[ed] a structured environment that includes financial and medication management," his condition "will likely not improve and may worsen significantly." (Risk Assessment at 19.) Although Feldmann claims he would live with his mother upon release, (Obj. at 2), he has a history of homelessness, and the FMC panel concluded that he would likely be homeless upon release, in which case he would also struggle to comply with his mental health treatment, which is designed to reduce his risk for violence. (Risk

Assessment at 32; *see* Hr'g Tr. at 29–30 (noting concerns with Feldmann's complying with medications because of homelessness).)

***Recent incidents and identified potential targets.*** While not addressed by Feldmann, the FMC panel was particularly concerned about his escalating conduct directed toward federal court personnel, who he perceives as having wronged him.[6] Identified potential targets can be a major factor in dangerousness determination. *Williams*, 299 F.3d at 677. The record before the Court, including the criminal complaint, FMC records, Risk Assessment, and Dr. Klein's testimony show that Feldmann has been fixated on federal court personnel, and continues to insist that he was "set up" for a criminal charge to prevent him from prevailing on his civil lawsuits. (Risk Assessment at

---

[6] The Risk Assessment summarizes the incidents that led to Feldmann's pending criminal charges:
> It appears [Feldmann] first began engaging in inappropriate communications and behaviors with United States District Courts in 2014, such that he was barred from entering the Federal Courthouse in El Paso, Texas. . . . In 2015, Mr. Feldmann's attention turned to the Federal Courthouse in Las Vegas, Nevada. He "became enraged" in September 2015 when he was informed he would be charged for making photocopies. He was escorted out of the courthouse and barred from entering. Mr. Feldman's attention returned to the Federal Courthouse in El Paso in 2016. He left angry and profane messages, such that staff feared for their safety. In February 2016, he threatened to shoot a United States District Court Judge. His obscene and harassing messages continued in 2017, which included another message threatening execution. In December 2017, he indicated he was monitoring a United States District Court Judge and made additional threatening statements toward a Judge and his family. He also warned he was "going to shoot up the place and create a blood bath."

(Risk Assessment at 27; *see* Crim Compl. (sworn statement summarizing most of these events); USA 683 (9/17/2019 U.S. Marshal Service email to FMC psychologist).)

30, 33 ("He is at very high risk for making additional threatening statements similar to those that resulted in his arrest.").)[7]

For these reasons, the Court finds that the government has proven by clear and convincing evidence that if released, there is a substantial risk of that Feldmann would harm another person as the result of his mental illness.

## IV. Absence of Suitable State Placement

Feldmann also argues that the government has not proven the absence of a suitable state placement. In *United States v. Wigren*, the Eighth Circuit held that Section 4246(d) "does not endow the committed person with a judicially-enforceable 'right' to state custody that must be adjudicated at the hearing." 641 F.3d 944, 947 (8th Cir. 2011). It explained that "[t]he statute requires an initial certification by the warden about the availability of state custody, but does not call for the government to present evidence on

---

[7] Feldmann does not raise a causal nexus challenge. *See Williams*, 299 F.3d at 676 (noting that § 4246 requires a "direct causal nexus between mental disease or defect and dangerousness"). Even if he had, the FMC panel's opinion that Feldmann's mental illness played a "significant role in many of his past aggressive behaviors," including "his threatening behaviors prior to and during his arrest for the current charge," (Risk Assessment at 30), shows a direct causal nexus between Feldmann's mental illness and his dangerousness. (*See also* Hr'g Tr. at 28 ("There's also a whole host of psychosocial factors that . . . elevate Mr. Feldmann's risk to engage in bodily harm towards another or a significant damage to property."); *see S.A.*, 129 F.3d at 1001 (holding that expert testimony that defendant's dangerousness was "directly connected" with his mental illness and that his condition is a "significant factor" contributing to his violent behavior was "more than sufficient" to satisfy the causal nexus requirement). The Court finds that the government has established a causal nexus between Feldmann's condition and his dangerousness.

13

that matter, or for the court to make a determination about it." *Id.* Here, the government has presented a certification by the warden of FMC-Rochester that "suitable arrangements for state custody and care of [Feldmann] are not currently available." (Gov't Ex. D; *see* Gov't Ex. E (letter from California's Department of State Hospitals stating it cannot accept the request for interstate transfer of Feldmann).) Under *Wigren*, this certification is sufficient. Although Feldmann disagrees, this Court must follow the decisions of the Eighth Circuit. *See Valspar Corp. v. PPG Indus., Inc.*, No. 16-CV-1429 (SRN/SER), 2017 WL 3382063, at *3 (D. Minn. Aug. 4, 2017) ("[N]o one doubts that the circuit court's decision is within its authority and binding on the parties until and unless the Supreme Court (or the circuit court sitting *en banc*) says otherwise.") (collecting cases).

The government has established by clear and convincing evidence that Feldmann has a mental disease or defect such that his release would create a substantial risk of bodily injury to another person, and the lack of any suitable state placement. The Court thus concludes that Feldmann should be committed to the custody of the Attorney General for continued confinement at FMC until suitable state placement may be found or until his release no longer creates a substantial risk of bodily injury to another person.[8]

---

[8] The Court notes that the Attorney General has a continuing obligation to exert all reasonable efforts to place Feldmann in a suitable state facility, and that his custodians must prepare annual reports concerning his mental condition and the need for continued commitment. 18 U.S.C. §§ 4246(d) and 4247(e)(1)(B).

## CONCLUSION

Based on all the files, records, and proceedings in this case, IT IS HEREBY ORDERED THAT:

1. Steven Wayne Feldmann's objections (ECF No. 39) are OVERRULED;

2. The Report and Recommendation (ECF No. 35) is ACCEPTED;

3. The government's Petition to Determine Present Mental Condition of an Imprisoned Person Due for Release under 18 U.S.C. § 4246, (ECF No. 1), is GRANTED; and

4. Steven Wayne Feldmann is committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility until a suitable state placement may be found or he is no longer in need of such custody for care or treatment in such a facility.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 28, 2021                BY THE COURT:

                                   s/Nancy E. Brasel
                                   Nancy E. Brasel
                                   United States District Judge